IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARCUS JAMES SMITH,

          Petitioner,                    No. CIV S-04-1442 DFL GGH P

    vs.

CLAUDE E. FINN, Warden,            FINDINGS & RECOMMENDATIONS
Duel Vocational Institution,

          Respondent.

_____/

I. INTRODUCTION

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Petitioner pled guilty on March 24, 1983 to one count of

second-degree murder (Cal. Penal Code § 187), and was sentenced April 21, 1983 to a term of

fifteen-years-to-life. This action is proceeding on the petition filed July 22, 2004, wherein

petitioner challenges his denial of parole on August 15, 2002, based on the following claims: (1)

the Board's denial of parole breached plaintiff's plea agreement, contravened Cal. Penal Code §

3041 and California's "matrix system" under 15 Cal. Admin. Code § 2403, and was made

pursuant to an illegal state policy denying parole to all inmates convicted of murder, thus

violating due process, imposing cruel and unusual punishment, and effecting an ex post facto

law; and (2) petitioner's sentence is disproportionately longer than sentences imposed on inmates

1    in other states for the same crime, thus denying petitioner equal protection and constituting cruel

2    and unusual punishment.[1]

3           Respondent filed an answer on October 8, 2004.  On October 28, 2004, petitioner

4    filed a traverse, wherein he also sought appointment of counsel and an evidentiary hearing.  After

5    carefully reviewing the record, the court recommends the petition be denied.

6    II.  ANTI-TERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA)

7           The Anti-Terrorism and Effective Death Penalty Act (AEDPA) applies to this

8    petition for habeas corpus which was filed after the AEDPA became effective.  Buckley v.

9    Terhune, 441 F.3d 688, 694 (9th Cir. 2006), citing Lindh v. Murphy, 521 U.S. 320, 326-27, 117

10   S. Ct. 2059 (1997).   The AEDPA "worked substantial changes to the law of habeas corpus,"

11   establishing more deferential standards of review to be used by a federal habeas court in

12   assessing a state court's adjudication of a criminal defendant's claims of constitutional error.

13   Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

14          In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

15   Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

16   for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

17   between "contrary to" clearly established law as enunciated by the Supreme Court, and an

18   "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

19   to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

20   Court on a point of law, or (2) if the state court case is materially indistinguishable from a

21   Supreme Court case, i.e., on point factually, yet the legal result is opposite.

22   \\\\\

23

24          [1]  These assertions, made interchangeably in a petition that names without developing
     multiple legal challenges, render petitioner's contentions imprecise and difficult to construe,
25   despite exhaustion through the state courts.  The court has reviewed petitioner's state filings in
     conjunction with the instant petition and has construed petitioner's contentions as clearly as
26   possible.

1        "Unreasonable application" of established law, on the other hand, applies to

2 mixed questions of law and fact, that is, the application of law to fact where there are no factually

3 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

4 Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

5 AEDPA standard of review which directs deference to be paid to state court decisions.  While the

6 deference is not blindly automatic, "the most important point is that an *unreasonable* application

7 of federal law is different from an incorrect application of law....[A] federal habeas court may not

8 issue the writ simply because that court concludes in its independent judgment that the relevant

9 state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

10 that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

11 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

12 objectively unreasonable nature of the state court decision in light of controlling Supreme Court

13 authority.  Woodford v. Viscotti, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

14        The state courts need not have cited to federal authority, or even have indicated

15 awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 8, 123 S.

16 Ct. 362, 365 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself

17 is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

18 unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

19 occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

20 established Supreme Court authority reviewed must be a pronouncement on constitutional

21 principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

22 binding only on federal courts.  Early, 123 S. Ct. at 366.

23        "The state court need not cite or even be aware of the governing Supreme Court

24 cases, 'so long as neither the reasoning nor the result of the state court decision contradicts

25 them.'"  Powell v. Galaza, 328 F.3d 558, 563 (9th Cir. 2003), quoting Packer, 537 U.S. at 8, 123

26 S. Ct. at 365.  However, where the state courts have not addressed the constitutional issue in

1 dispute in any reasoned opinion, the federal court will independently review the record in

2 adjudication of that issue.  "Independent review of the record is not de novo review of the

3 constitutional issue, but rather, the only method by which we can determine whether a silent state

4 court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

5 2003).

6         In reviewing a state court's summary denial of a habeas petition, the court "looks

7 through" the summary disposition to the last reasoned decision.  Shackleford v. Hubbard, 234

8 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04, 111 S.

9 Ct. 2590 (1991)).  In the instant case, both the California Court of Appeal and the California

10 Supreme Court issued summary denials of petitioner's petitions for review, which raised the

11 claims raised in the instant petition.  Answer, Exhibits H, I; Petition, pp. 8, 9.  Accordingly, the

12 court looks through to the March 3, 2003 reasoned decision of the San Bernardino County

13 Superior Court to determine whether its denial of petitioner's claims was contrary to, or an

14 unreasonable application of, clearly established Supreme Court authority.

15 III.  DISCUSSION

16         A.  Exhaustion of State Court Remedies

17         The exhaustion of state court remedies is a prerequisite to the granting of a

18 petition for writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  However, a petition may be denied

19 on the merits without exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2).  A petitioner

20 satisfies the exhaustion requirement by providing the highest state court with a full and fair

21 opportunity to consider all claims before presenting them to the federal court.  Picard v. Connor,

22 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), cert. denied, 478

23 U.S. 1021 (1986).

24 \\\\\

25 \\\\\

26 \\\\\

1      Respondent concedes petitioner exhausted his state court remedies with respect to

2   the claims raised in his federal habeas petition.[2]  Answer, p. 3:6-7.

3      B. Successive Claim

4      Respondent asserts that petitioner's equal protection claim should be dismissed as

5   "successive" because previously presented to the U.S. District Court for the Central District of

6   California, in Case No. CV 03-1004 GAF VBK.  Petitioner asserts the matters are not successive

7   because Case. No. 03-1004 challenged petitioner's 1983 plea bargain, while the instant petition

8   challenges petitioner's 2002 denial of parole.  Traverse, at p. 1.

9      Pursuant to 28 U.S.C. § 2244(b)(1), "[a] claim presented in a second or successive

10  habeas corpus application under section 2254 that was presented in a prior application shall be

11  dismissed."  For the reasons set forth below, petitioner's equal protection claim is not successive.

12      The petition before the U.S. District Court for the Central District of California

13  was denied initially by the San Bernardino County Superior Court on July 8, 2002, the California

14  Court of Appeal on August 27, 2002, the California Supreme Court on June 18, 2003, then filed

15  in the Central District on September 4, 2003.  Respondent moved to dismiss on the ground that

16  petitioner had filed in the Supreme Court, on September 15, 2003, a second habeas petition

17  asserting the same claims raised in the Central District petition.  (Such "second" petition was

18  filed pursuant to the exhaustion of state court remedies underlying the instant habeas petition.)

19  On October 31, 2003, the Central District found that petitioner had exhausted all claims before it

20  with the exception of petitioner's "Ground Two" asserting denial of equal protection based on,

21

22      [2]  Following the Board's denial of parole on August 15, 2002, petitioner filed a petition
    for writ of habeas corpus in the San Bernardino County Superior Court on July 5, 2002, which
23  was denied on March 20, 2003. Answer, Exh. B, p. 15; Exh.G, as amended. (The Superior Court
    order states the Board decision was heard and decided on September 5, 2002; however,
24  September 5, 2002 is the effective date of the Board's August 15, 2002 decision.)  Petitioner
    thereafter filed a petition in California's Fourth District Court of Appeal, which was summarily
25  denied on June 18, 2003. Answer, Exh. H; Petition, at p 9.  A petition for review filed
    September 15, 2003 in the California Supreme Court was summarily denied on June 9, 2004.
26  Answer, Exh. I; Petition, at p. 8, 10.

1  "Sentence (length) is 'statistical disparate [sic] from other sentences of inmates in other states,

2  who are similarly situated."  The Honorable Victor B. Kenton granted respondent's motion to

3  dismiss and accorded petitioner several options.  Petitioner moved to stay the petition and

4  dismiss the unexhausted claim pending a decision by the Supreme Court on the second habeas

5  petition, which the Central District granted on November 26, 2003.  The Supreme Court

6  summarily denied the second petition (i.e., underlying the present action) on June 9, 2004.

7          On July 12, 2004, petitioner filed in the Central District a First Amended Petition,

8  which was dismissed with prejudice in its entirety on March 8, 2005, on the ground it was time-

9  barred under AEDPA's one-year statute of limitations.  That petition raised similar legal claims

10  to those presented herein (see December 8, 2004 Findings and Recommendations, at pp. 3-4

11  (Central District Case No. CV 03-1004 GAF VBK)), but were limited to petitioner's contention

12  his plea agreement had not been implemented; the court's findings and order do not indicate that

13  petitioner challenged a specific decision of the Board but rather the failure of the Board to act.

14  Applying AEDPA's criteria for establishing the accrual date of a claim and commencement of

15  running the statute of limitations (i.e., the date the factual predicate underlying the claim could

16  have been discovered through the exercise of due diligence (28 U.S.C. § 2244(d)(1)(D)), the

17  Central District found that petitioner's claim accrued no later than 1995.[3]   The 2003 filing of

18  petitioner's petition was well beyond the one-year statute of limitations imposed by AEDPA

19

20          [3]  The court reasoned: "Smith indicated that he accepted a plea bargain because he would
21  be out in 7 ½ years on a 15 years to life sentence, but would not be out for 12 ½ years on a
    sentence of 25 years to life for first degree murder. . . .[S]ince Smith appears to claim that he had
22  a deal for a seven and a half year release date, he knew or should have known when he was
    denied release after seven and a half years in custody (somtime in 1990 or 1991) that the terms of
23  the alleged plea agreement had been violated. . . . [H]e certainly knew in 1995, when he reached
    the 12 ½ year mark, which is the time when he believed he would have been released on a first
24  degree murder conviction. [Since the statute of limitations under AEDPA commenced running
    on April 24, 1996] . . .he would have had until April 24, 1997, or some date not long after that, to
25  file his petition.  But he waited until September 2003, more than 20 years after the imposition of
    sentence to seek habeas corpus relief.  Under any theory, the delay is far beyond the expiration of
26  any limitations period and the motion to dismiss with prejudice should be granted."  March 8,
    2005 Order, at p. 3 (Central District Case No. CV 03-1004 GAF VBK).

(viz., April 24, 1997, for claims that accrued prior to the April 24, 1996 effective date of the AEDPA legislation).

Petitioner's request for a certificate of appealability was denied by the Central District on April 7, 2005, and the Ninth Circuit Court of Appeals on August 17, 2005.

Respondent's contention that petitioner's present equal protection claim is successive to that raised in the Central District is without merit. While dismissal based on statute of limitations is an adjudication on the merits of the claim,[4] thus rendering future petitions on the same claim "successive," petitioner's challenge of the Board's August 2002 decision challenges an entirely different determination and is therefore not successive. See, e.g., Vasquez v. Parrott, 318 F.3d 387, 390 (2nd Cir. 2003) ("even a petition that has been finally adjudicated on the merits will not count for purposes of the successive petition rule unless the second petition attacks the same judgment that was attacked in the prior petition) (citation and internal quotations omitted)."

The court therefore proceeds to petitioner's contentions.[5]

C. Denial of Parole

1. Background

On March 24, 1983, petitioner pled guilty to one count of second-degree murder pursuant to Cal. Penal Code § 187. On April 21, 1983, pursuant to a plea bargain, petitioner was sentenced to a term of fifteen-years-to-life. Petitioner challenges his second denial of parole

\\\\\

---

[4] See Ellingson v. Burlington Northern Inc., 653 F.2d 1327, 1330 n. 3 (9th Cir.1981) ("[a] judgment based on the statute of limitations is 'on the merits' "); see also Plaut v. Spendthrift Farm, 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits").

[5] However, this does not mean that a challenge to a parole suitability determination may be based on an alleged breach of a plea agreement. See infra.

7

1   rendered August 15, 2002,[6] in petitioner's nineteenth year of incarceration.

2     California's parole system provides that a panel of the Board of Parole Hearings,

3   previously the Board of Prison Terms (hereafter referred to interchangeably as the "Board"), shall

4   meet with each inmate one year prior to his minimum eligible parole release date to "normally set

5   a parole release date."  Cal. Penal Code § 3041(a).  However, a release date shall not be set if the

6   Board "determines that the gravity of the current convicted offense or offenses, or the timing and

7   gravity of current or past convicted offense or offenses, is such that consideration of the public

8   safety requires a more lengthy period of incarceration for this individual."  Cal. Penal Code §

9   3041(b); see also, 15 Cal. Adm. Code § 2402(a) (relative to murders committed after 1978)

10  ("[r]egardless of the length of time served, a life prisoner shall be found unsuitable for and

11  denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of

12  danger to society if released from prison").  Determination of parole suitability requires

13  consideration of "[a]ll relevant, reliable information" (15 Cal. Adm. Code § 2402(b)), including

14  \\\\\

15  \\\\\

16  \\\\\

17  \\\\\

18  \\\\\

19  \\\\\

20  \\\\\

21  \\\\\

22  \\\\\

23  \\\\\

24

25    [6] Petitioner has subsequently filed two additional habeas actions in this court, both still
26  pending: Smith v. Finn, 05 CIV 2601 MCE EFB P (challenging denial of parole August 2003),
    and Smith v. Finn, 06 CIV828 GEB EFB P (challenging denial of parole April 2005).

specific circumstances that indicate suitability and unsuitability for release (id., § 2402(c) and

(d)).[7]  Upon a finding of suitability, the Board's determination of a release date must conform

---

[7] Section 2402(c) sets forth the circumstances tending to show unsuitability:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.

> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style manner.

> (C) The victim was abused, defiled or mutilated during or after the offense.

> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Section 2402(d) sets forth the circumstances tending to indicate suitability:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to the victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or

9

1   with "uniform terms for offenses of similar gravity and magnitude in respect to their threat to the

2   public," Cal. Penal Code § 3041(a), as provided by the "matrix" of base terms set forth in 15 Cal.

3   Adm. Code § 2403, as qualified by the aggravating and mitigating circumstances set forth in 15

4   Cal. Adm. Code § 2404.  Procedures governing parole suitability hearings are set forth in Cal.

5   Penal Code § 3041.5 (requiring notice, an opportunity to be heard, and a written statement of

6   reasons if the panel decides against setting a parole date).

7            In the present case, the Board accorded petitioner advance notice of his August

8   15, 2002 parole hearing, including his right to attend the hearing and to an attorney; petitioner

9   waived both opportunities.  Answer, Exhibits C, D, and E.  After a hearing that included the

10  submission of information relevant to petitioner's conviction, incarceration and parole plans

11  (Answer, Exh. B, pp. i-ii, 1-12), the Board concluded that petitioner posed an unreasonable risk

12  of danger to society if released from prison and denied parole for the following reasons (Answer,

13  Exh. B, pp. 13-15):

14       The Panel has reviewed all information from the public and relied on the
         following circumstances in concluding that the prisoner is not suitable for parole
15

16       relieving suffering of the victim, or indicating that he understands the nature and
         magnitude of the offense.
17

18       (4) Motivation for the Crime.  The prisoner committed his crime as the result of
         significant stress in his life, especially if the stress has built over a long period of
19       time.

20       (5) Battered Woman Syndrome.  At the time of the commission of the crime, the
         prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b),
21       and it appears the criminal behavior was the result of that victimization.

22       (6) Lack of Criminal History.  The prisoner lacks any significant history of violent
         crime.
23
         (7) Age.  The prisoner's present age reduces the probability of recidivism.
24
         (8) Understanding and Plans for Future.  The prisoner has made realistic plans for
25       release or has developed marketable skills that can be put to use upon release.

26       (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to
         function within the law upon release.

and would pose an unreasonable risk of danger to society if released from prison. The offense was carried out in an exceptionally cruel, callous, violent, brutal manner. Multiple victims were attacked, injured or killed in the same incident. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering and life. These conclusions are drawn from the Statement of Fact, wherein the inmate, on or about March 11th, 1980, after seeing his estranged wife in the presence of another man in a vehicle, did shoot the male, a Ron Anderson, in the jaw. He then returned to the vehicle and then shot his wife four times, striking her three times in the head and once in the shoulder, causing her death. Mr. Anderson survived. The inmate does have a record of violence or assaultive behavior. He has numerous arrests. However, the only conviction that he has was for battery and entering or remaining in a non-commercial dwelling. He plead guilty, was given three years probation. And although he has other arrests for things–such things as robbery, attempted rape, robbery, assault with a deadly weapon on two different occasions, those were either not filed on or there was no disposition. The inmate has not sufficiently participated in beneficial self-help and therapy programming. He has received two 128 counseling chronos during his total incarceration. The last one was in 1987–or in 1988. He has received two 115s during his total incarceration, the last one in 1991. And that was for force and violence. Psychological evaluation, dated 4-20-01, by Eric Nelson, does appear to be supportive. Inmate lacks realistic parole plans in that he does not have verifiable residential plans in any county within the State of California, nor does he have acceptable employment plans. The Hearing Panel notes that responses to 2034 Notices indicate opposition to a finding of parole suitability, specifically the District Attorney of San Bernardino County. The Panel makes the following findings. That the inmate needs additional time in order to continue with his self-help, as previously recommended. He should be, however, commended for receiving a GED in 2001, have no 115s since 1991. The denial will be for a period of one year, at which time we ask that the inmate remain disciplinary free, that he upgrade himself, excuse me, that he participate in the self-help and therapy programming.

Petitioner challenges the Board's August 2002 denial of parole as a breach of his plea agreement (continuing failure to parole petitioner after serving his minimum term of fifteen years), failure to comply with state law (failure to fix a parole date pursuant to Cal. Penal Code § 3041 and the "matrix" set forth at 15 Cal. Admin. Code § 2403), and adherence to illegal state policy (the alleged policy of former Governor Gray Davis that parole be denied to all inmates convicted of murder).

### 2. Due Process

California inmates have a constitutionally protected liberty interest in a parole date and the deprivation of that interest must comply with the requirements of due process. Sass

\\\\\

1  v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006).[8]  Where parole statutes

2  give rise to a protected liberty interest, due process is satisfied in the context of a parole hearing

3  where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is

4  denied, a statement of the reasons demonstrating "some evidence" for the denial.  Jancsek v.

5  Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (quoting Greenholtz v. Nebraska

6  Penal Inmates, 442 U.S. 1, 16, 99 S. Ct. 2100, 2108 (1979)).  This court's review under the

7  "some evidence standard" "'does not require examination of the entire record, independent

8  assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant

9  question is whether there is any evidence in the record that could support the conclusion reached

10  by the [] board,'" or, phrased differently, whether "'the record is not so devoid of evidence'" that

11  the findings of the board are "'without support or otherwise arbitrary.'"  Sass, 461 F.3d at 1129,

12  quoting Superintendent v. Hill, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774 (1985); see also,

13  Morales v. California Dept. of Corrections, 16 F.3d 1001 (9th Cir. 1994), rev'd on other grounds,

14  California Dept. of Corrections v. Morales, 514 U.S. 499 (1995); Powell v. Gomez, 33 F.3d 39,

15  40 (9th Cir. 1994) ("some evidence" test also applies to parole revocation).

16        Petitioner's initial due process challenges – violation of his plea agreement,

17  failure to set a parole release date pursuant to Cal. Penal Code § 3041 or the state's "matrix" of

18  base terms – share petitioner's contention that the Board erred in failing to set and implement a

19  specific parole release date.  The San Bernardino County Superior Court addressed these matters

20  as follows (Exhibit G to Answer, filed September 29, 2006 (Document 10)):

21        Petitioner does not have a constitutional or statutory right to have a parole date
         set.  In re Minnis, 7 Cal. 3d 639 [646] [1972] ["the length of terms of
22        imprisonment and rights of parole shall be subject to redetermination from time to
         time"]; Penal Code § 3041(b).  Penal Code Section 3041 does provide for the
23        statutory right to a determination of suitability for parole and sets forth the
         procedure for establishing that suitability.

24

25

26  _____

      [8]  The parties' briefing predates the Ninth Circuit's Sass decision.

1   As demonstrated below, this assessment is consistent with federal law and the

2   requirements of federal due process.

3   a. <u>Plea Agreement</u>

4   The court first finds that alleging breach of a plea agreement fails to state a

5   cognizable claim when challenging a denial of parole.  None of the factors which guide the

6   BPT's decisions in parole suitability hearings include reference to enforcement of plea

7   agreements.  If interpretation of plea agreements plays no part in the BPT decision, it should play

8   no part in the analysis of state courts reviewing the BPT decision, nor in the analysis of this

9   federal court ultimately reviewing a BPT decision as filtered through the state court system in

10  federal habeas.  Rather, breach of plea agreements should be first directed *as an attack on his*

11  *conviction and judgment per se* to the state courts on direct review or habeas corpus which can

12  then adjudicate such a challenge, and later to a challenge in federal habeas regarding that state

13  court decision.  Petitioner may challenge a state denial of his challenge to a plea agreement *one*

14  *time* in federal habeas, and successive challenges to his conviction and judgment will incur the

15  successive claim bar in federal habeas.

16  Petitioner has made his one federal challenge to his conviction and judgment

17  based on an alleged breach of his plea agreement in the Central District.  A federal habeas

18  challenge to his parole suitability determination based on an alleged breach of the plea agreement

19  fails to state a federal claim because none of the liberty interest in parole suitability hearings as

20  established by state law includes reference to enforcement of plea agreements.  Nevertheless, in

21  an abundance of caution, the court will find, as an alternative, that the breach of plea agreement

22  would fail on its own merits even if reviewable here.

23  Petitioner asserts he was denied due process by the Board's denial of parole

24  because petitioner has already served his minimum sentence of fifteen years.  Petitioner

25  characterizes this contention as a breach of plea agreement or breach of contract.

26  \\\\\

1       "'Plea agreements are contractual in nature and are measured by contract law

2   standards.'  United States v. De la Fuente, 8 F.3d 1333, 1337 (9th Cir. 1993).  The terms of oral

3   plea agreements are enforceable, as are those of any other contracts, even though oral plea

4   agreements are not encouraged by reviewing courts.  See, e.g., United States v. Monreal, 301

5   F.3d 1127, 1133 (9th Cir. 2002)."  Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).

6       Petitioner has presented no evidence of a plea agreement other than the standard

7   term of fifteen-years-to-life, nor has he demonstrated entitlement to release upon reaching his

8   minimum sentence.  In the absence of an agreement that can be specifically enforced, the Board

9   is not required to find petitioner eligible for parole upon completion of a minimum term.  Rather,

10  consideration of parole suitability remains within the sound discretion of the Board.  Cal. Penal

11  Code § 3041; accord, Williams v. Knowles,  2006 WL 1876897, *3 (E.D.Cal. 2006); accord,

12  McCauley v. Brown, 2006 WL 3020905 (N.D. Cal. 2006).

13      Accordingly, the court finds no breach of contract or plea agreement.

14      b.  Cal. Penal Code § 3041

15      Petitioner contends he was denied due process by the Board's failure to set a

16  parole date one year prior to his minimum eligible parole release date, pursuant to Cal. Penal

17  Code § 3041(a) (directing the Board to meet with each inmate one year prior to his minimum

18  eligible parole release date to "normally set a parole release date"), and continues to be denied

19  due process by the Board's repeated failure to set a parole date, thus transforming his sentence to

20  "life without parole, special circumstances (death) or first degree murder (25 years to life)."

21  Memorandum in Support of Petition, at p. 1.

22      This contention, insofar as it challenges the Board's actions when petitioner

23  reached his minimum eligible parole release date, is time-barred under AEDPA and successive

24  based upon petitioner's Central District petition.  To the extent petitioner challenges the Board's

25  August 2002 failure to set a parole date, the California Supreme Court has found that section

26  3041 is not mandatory and does not create a presumption that parole will be granted.  In re

14

<u>Dannenberg</u>, 34 Cal. 4th 1061, 1084, 1087-88 (2005).[9]   Rather, the Board is obligated to deny parole where it determines, as here, that "public safety requires a more lengthy period of incarceration for this individual."  Cal. Penal Code § 3041(b); <u>Dannenberg</u>, 34 Cal. 4th at 1090-1091.

Accordingly, petitioner's claim he was improperly denied parole under Cal. Penal Code § 3041(a) is without merit.

c.  <u>"Matrix" of 15 Cal. Admin. Code § 2403</u>

Petitioner contends he was denied due process by the Board's failure to set his release date within the sentencing guidelines established by the matrix of base terms set forth in 15 Cal. Admin. Code § 2403.

By its terms, section 2403 applies only to inmates who have been found parole suitable.  <u>See</u> 15 Cal. Admin. Code § 2403(a) ("The panel shall set a base term for each life prisoner who is found suitable for parole").  Consistently, the California Supreme Court recently held in <u>In re Dannenberg</u>, supra, 34 Cal. 4th at 1091, that the Board is not required to refer to its sentencing matrices or other crimes of the same type in deciding whether a prisoner is *suitable* for parole.  No federal authority requires state parole boards, as a matter of course, to set a parole date, thus triggering application of the "matrix," notwithstanding a supported finding the prisoner poses an unreasonable risk of danger to society.

Accordingly, petitioner is not entitled to relief on his "matrix" claim.

d. <u>Ex Post Facto Law</u>

Petitioner contends the Board's August 2002 decision denying him parole was made pursuant to an unlawful policy promulgated by former California Governor Gray Davis that all prisoners serving life sentences for murder always be found unsuitable for parole.  This

_____

[9]  Petitioner relies throughout his petition on the overruled decision in <u>In re Dannenberg</u>, 125 Cal. Rptr. 2d 458 (1st Dist. 2002); the operative decision is <u>In re Dannenberg</u>, 34 Cal. 1061, 23 Cal. Rptr. 3d 417 (2005).

15

allegation  – that a parole decision was made without individualized consideration – states a due process claim.  See Irons v. Warden of California State Prison-Solano, 358 F. Supp. 2d 936, 950 (E.D.Cal. 2005), citing McQuillion v. Schwarzenegger, 369 F.3d 1091, 1097 (9th Cir. 2004). While the Superior Court did not address this issue, petitioner's articulation of the claim before that court was vague; the claim has gained clarity as it has progressed through the courts.

"The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" Weaver v. Graham, 450 U.S. 24, 28, 101 S. Ct. 960, 964 (1981) (quoting Cummings v. Missouri, 4 Wall. 277, 325-26 (1867)).[10]  For a law to be ex post facto, "it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Id. 450 U.S. at 29.  To demonstrate an ex post facto violation, petitioner must show the existence of a law that was retrospectively applied and operated to his disadvantage. Weaver, 450 U.S. at 29, 101 S. Ct. at 964.  The authority of the governor to review parole Board decisions is not itself an ex post facto law. Johnson v. Gomez, 92 F. 3d 964, 967 (9th Cir. 1996).

The California Supreme Court found no evidence of a gubernatorial "no parole" policy under the facts presented in In re Rosenkrantz, 29 Cal. 4th 616 (2002).  However, in this district, Judge Karlton found in 2005 that such a policy existed under former Governors Wilson and Davis, the latter serving until November 17, 2003.  See Coleman v. Board of Prison Terms, 2005 WL 4629202 (CIV-S 96-0783 LKK PAN P),[11] currently on appeal to the Ninth Circuit. Judge Karlton held that the petition for habeas corpus should be granted unless, within 60 days, the respondent provided "a fair parole suitability hearing, conducted by a board free of any

---

[10]  "No Bill of Attainder or ex post facto Law shall be passed [by Congress]."  Art. I, § 9, cl. 3.  "'No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . .'" Art. I, § 10.

[11]  Findings and Recommendations filed on December 22, 2004, were adopted by Judge Karlton by Order filed on May 20, 2005, as amended on December 2, 2005.

1  prejudice stemming from a gubernatorial policy against parole for murderers."  Id., at *4.

2       With due recognition of the complexities presented by these conflicting state and

3  federal rulings,[12] this court made the following analysis in Williams v. Knowles, 2006 WL

4  1876897, *5 (E.D.Cal. 2006), concluding that petitioner's "no parole" argument was moot:  even

5  if the petition were granted, the appropriate remedy would be a new hearing before an unbiased

6  panel (notwithstanding the petitioner's request a parole date simply be set); since the Board had

7  already provided subsequent, presumptively nonbiased, parole eligibility hearings after Governor

8  Davis' tenure, and in the normal course would provide yet another hearing prior to the time

9  Williams would reach finality, further hearing was unnecessary; in other words, petitioner had

10  already obtained his remedy.

11       The facts of the present case are analogous.  Were petitioner to be granted relief

12  under the reasoning of Coleman, the remedy would be a subsequent impartial parole eligibility

13  hearing.  However, petitioner has had, since his August 2002 hearing, at least two subsequent

14  hearings resulting in a denial of parole.  The most recent, in April 2005, was held during the

15  tenure of current Governor Arnold Schwarzenegger.  Petitioner does not assert Governor

16  Schwarzenegger has perpetuated a gubernatorial "no parole" policy; moreover, as this court

17  noted in Williams v. Schwarzenegger, 2006 WL 2548217, *13 (E.D. Cal. 2006), there is no

18  indication that any parole eligibility hearings during Governor Schwarzenegger's tenure have

19  been or would "be affected by a historical 'no parole' policy assertedly instituted by two previous

20  governors."  Additionally, petitioner will have likely obtained yet another parole eligibility by the

21

22      [12] "Complex issues abound insofar as Coleman is urged by petitioner as applicable to
his 1999 BPT hearing.  Some of those issues are as follows: (1) was the holding in Coleman
applicable to all BPT panels or just the panel at issue in Coleman; (2) how does one reconcile

23  state court holdings contrary to Coleman, which are also entitled to res judicata/collateral
estoppel effect in federal court; (3) did petitioner waive his objection to a no parole policy

24  occasioned by biased BPT panel members when he expressly "temporarily" waived his bias
objection when proceeding before the panel; (4) what is the effect of Coleman in this case where

25  the BPT commissioners expressly disavowed that any "no parole" policy would motivate their

26  decision."  Williams v. Knowles, 2006 WL 1876897, *5 (E.D.Cal. 2006).

1   time this case reaches finality.  That is, petitioner has already obtained his putative remedy.

2       Accordingly, petitioner has not demonstrated entitlement to relief pursuant to his

3   contention the Board denied him parole pursuant to a "no parole" policy.

4           e.  "Some Evidence" Review

5       The Board's August 2002 hearing and decision finding petitioner unsuitable for

6   parole met the requirements of due process under the "some evidence" standard of review

7   articulated by the Supreme Court in Superintendent v. Hill, 472 U.S. at 455, 105 S. Ct. at 2774 .

8   This standard requires that reliable evidence support the Board's denial of parole, demonstrating

9   a reasoned, nonarbitrary decision specific to petitioner.  Significantly, petitioner does not contend

10  the Board's August 2002 decision failed to meet this standard.

11      The Board's August 2002 hearing satisfied the due process requirements of notice

12  and an opportunity to be heard.  Jancsek, supra, 833 F.2d at 1390.  Petitioner had advance written

13  notice of his parole hearing, an opportunity to submit materials for the Board's consideration,

14  access to the materials submitted to the Board for its consideration by others, and an opportunity

15  to be heard.  Petitioner chose not to attend the hearing but does not assert his decision was other

16  than voluntary.

17      Further, the Board's decision was supported by reliable evidence without undue

18  reliance on unchanging factors (see, Biggs v. Terhune, 334 F. 3d 910, 917 (9th Cir. 2003); see

19  also, Irons, 358 F. Supp. 2d at 947 ("continuous reliance on unchanging circumstances

20  transforms an offense for which California law provides eligibility for parole into a de facto life

21  imprisonment without the possibility of parole").  Although the Board relied on unchanging

22  factors – the nature of the offense, the number of victims, and plaintiff's criminal record – this

23  appears to have been the Board's first parole eligibility determination as to petitioner and hence

24  such reliance cannot be found unduly continuous.  These factors retained predictive value in

25  determining whether petitioner would be a risk to the public if released, and thus were

26  appropriately relied upon pursuant to the unsuitability-for-parole factors set forth in 15 Cal.

18

Admin. Code § 2402(c)(1)(A) (multiple victims), (c)(1)(D) (callous disregard for human suffering), and (c)(2) (previous record of violence).  The Board performed an individualized assessment as demonstrated by its reliance on petitioner's failure adequately to participate in self-help and therapy programs (see, e.g., 15 Cal. Admin. Code § 2402(c)(5) (psychological factors), and (c)(6) (institutional behavior); see also, the suitability factors 15 Cal. Admin. Code § 2402(d)(9)(institutional behavior), and (d)(3) (signs of remorse)).  Also important to the Board and within petitioner's control was his lack of realistic parole and employment plans.  See, 15 Cal. Admin. Code § 2402(d)(8)).  Consistently, while the Board commended petitioner for receiving a GED in 2001, and no prison disciplinary record since 1991, it deferred further consideration of parole for a period of one year, during which petitioner was encouraged to remain disciplinary free, participate in self-help and therapy programming and, presumably, make plans for parole including employment, all critical factors in assessing petitioner's risk to public safety.

The San Bernardino County Superior Court upheld the Board's decision based almost exclusively on the immutable factors of the crime and petitioner's criminal history, noting only in passing petitioner's "performance while in prison."[13]  However, for the reasons set forth

---

[13]  The Superior Court reasoned (Exhibit G to Answer, filed September 29, 2006 (Document 10):

California Code of Regulation, Title 15, Section 24002 [sic] sets forth the various factors to be considered.

The Board must consider all factors, both favorable and unfavorable, to satisfy due process, and this consideration must be more than pro forma.  The various factors considered must be supported by "some evidence."  In re Powell, 45 Cal. 3d 894.

While in this case it is apparent from the Decision that the Board did consider the various factors, it is also apparent that they relied primarily on the circumstances of the commission of the crime as well as the petitioner's criminal history and performance while in prison.  All of these factors are pertinent and are sufficient to support a finding of unsuitability for parole.  In re Seabock, 140 Cal. App. 3d 29.

above, including petitioner's failure to challenge the Board's assessment, this court finds the

Board's August 2002 decision denying petitioner parole satisfied all pertinent federal due process

requirements.

### 3. Equal Protection; Cruel and Unusual Punishment

Petitioner contends, without any factual support, that the Board's denial of parole

has resulted in petitioner serving a longer sentence than that prescribed for other inmates

convicted of second degree murder, particularly those in other states, thus denying petitioner

equal protection of the laws. Petitioner also contends that his sentence is disproportionately

harsh and in violation of the Eighth Amendment's prohibition against cruel and unusual

punishment.

The San Bernardino County Superior Court adequately addressed these

contentions as follows (Exhibit G to Answer, filed September 29, 2006 (Document 10)):

> Petitioner contends his sentence is cruel and unusual in that is it is "statistically
> disparate" (disproportionate) to sentences imposed from crimes of equal or greater
> severity.
>
> The United States Supreme Court has long held that the Eighth Amendment of the
> Constitutional does not prohibit the imposition of a sentence that is grossly
> disproportionate to the severity of the crime. The exception to this rule is capital
> cases or particular sentences in which the years imposed are greatly or
> unreasonably disproportionate to the crime committed. Rummell v. Estell[e], 45
> U.S. 263, 272, 285. Petitioner's fifteen years to life sentence is not one of those
> exceptions.
>
> Even if petitioner had submitted evidence in support of this contention, "mere

demonstration of inequality is not enough" to establish a violation of the Fourteenth

Amendment's equal protection clause . McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir.

The nature of the crime committed alone can constitute a sufficient basis for
denying parole (In re Minnis, supra), and the Board may weigh the degree of
violence used and the amount of viciousness demonstrated. In re Seabock, supra.
Here, the Decision related circumstances of the crime as demonstrating a
deliberate killing, which is more than enough to sustain a conviction for the
offense committed and for which the petitioner was convicted.

1991).  "[T]he Constitution does not require identical treatment.  There must be an allegation of invidiousness or illegitimacy in the statutory scheme before a cognizable claim arises."  Id. Further, "a sentence within the limits set by a valid statute may not be overturned on appeal as cruel and unusual punishment unless the sentence is so 'grossly out of proportion to the severity of the crime 'as to shock our sense of justice.'"  United States v. Cupa-Guillen, 34 F.3d 860, 864 (9th Cir.1994).  Only extreme sentences grossly disproportionate to the offense are forbidden by the Eighth Amendment.  Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S. Ct. 2680, 2704 (1991); United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992).

In In re Dannenberg, supra, 34 Cal. 4th at 1098, the California Supreme Court held that the Board is not required, in deciding whether a prisoner is *suitable* for parole, to compare that prisoner's "crime to other second degree murders, to its base term matrices, or to the minimum statutory prison term for that offense."  That is, "California's parole statutes allow the Board to find unsuitability without engaging in a comparative analysis of other offenses or applying 'uniform term' principles."  Id., at 1098, n. 18; see also, Connor v. Estelle, 981 F.2d 1032, 1034-35 (9th Cir. 1992) (periodic parole suitability reviews of individual prisoners, resulting in unequal sentences, violates neither equal protection nor due process).  Further, the length of time petitioner spent in prison as of August 2002 was within the statutory limits for second degree murder and not so grossly disproportionate either to the nature of the crime or in comparison with other sentences for second degree murder as to violate the Eighth Amendment's proscription against cruel and unusual punishment.  See Solem v. Helm, 463 U.S. 277, 303, 103 S. Ct. 3001, 3016 (1983) (only demonstrated significant disproportionality in sentencing warrants Eighth Amendment review); U.S. v. Zavala-Serra, 853 F.2d 1512, 1518 (9th Cir. 1988) ("the proportionality requirement of the [E]ighth [A]mendment does not require that a defendant's sentence be harmonized with sentences imposed by other courts on other defendants").  Federal due process requires only that the Board's decision denying parole be based on sufficient reliable evidence demonstrating the prisoner remains a danger to public safety.

1  Accordingly, petitioner is not entitled to relief on his equal protection or Eighth

2  Amendment claims.

3  C.  Appointment of Counsel and Evidentiary Hearing

4  In the concluding paragraph of his traverse, petitioner summarily requests

5  appointment of counsel and an evidentiary hearing.

6  There is no absolute right to appointment of counsel in habeas proceedings.  See

7  Coleman v. Thompson, 501 U.S. 722, 756-757, 111 S. Ct. 2546, 2568 (1991); Nevius v. Sumner,

8  105 F.3d 453, 460 (9th Cir. 1996).  However, "[w]henever the United States magistrate or the

9  court determines that the interests of justice so require, representation may be provided for any

10  financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title

11  28."  18 U.S.C. § 3006A(a)(2)(B).  Unless an evidentiary hearing is necessary, the decision to

12  appoint counsel is discretionary.  Bashor v. Risley, 730 F.2d 1228, 1234 (9th Cir.1984), cert.

13  denied, 469 U.S. 838 (1984); see also Rules Governing § 2254 Cases 8(c).  In exercising this

14  discretion, the court must consider the likelihood of petitioner's success on the merits and the

15  petitioner's ability to articulate his claims in light of their legal complexity.  Weygandt v. Look,

16  718 F.2d, 954 (9th Cir. 1983); see also, LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987) (no

17  abuse of discretion to deny counsel where petitioner demonstrated "a good understanding of the

18  issues and the ability to present forcefully and coherently his contentions").

19  An evidentiary hearing is unnecessary to assess the merits of petitioner's claims.

20  An evidentiary hearing is unwarranted if petitioner "has failed to develop the factual basis of a

21  claim in State court proceedings," unless the claim relies on a new rule of constitutional law that

22  may be applied retroactively on a collateral claim or the factual predicate could not have been

23  previously discovered through the exercise of due diligence, and "the facts underlying the claim

24  would be sufficient to establish by clear and convincing evidence that but for constitutional error,

25  no reasonable factfinder would have found the applicant guilty of the underlying offense."  28

26  U.S.C. § 2254(e)(2).  Petitioner makes neither assertion.  The state court record submitted by the

combined efforts of petitioner and respondent does not establish adequate factual support to support petitioner's constitutional claims.  "It has been explained by the United States Supreme Court that a failure to develop in state court an adequate record for relief precludes an evidentiary hearing in federal court in a habeas action when a petitioner has 'neglected his [or her] rights in state court.'"  Bragg v. Galaza, 242 F.3d 1082, 1089-1090 (9th Cir. 2001), quoting Williams (Terry), 529 U.S. at 435, 120 S. Ct. at 1490, and citing Baja v. Ducharme, 187 F.3d 1075, 1078-79 (9th Cir. 1999).  Further, since petitioner has not demonstrated the necessity of convening an evidentiary hearing, consideration of his request for appointed counsel is within this court's sound discretion based on the likelihood of petitioner's success on the merits and his ability to articulate his legal claims.  Petitioner has adequately articulated his legal claims but the court finds these claims to be without merit.

Accordingly, petitioner's request for appointment of counsel, as well as his request for an evidentiary hearing, should be denied.

IV.  CONCLUSION

For the foregoing reasons, the court finds the rulings of the state courts to be consistent with federal law.  Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's application for a writ of habeas corpus, filed July 22, 2004, be denied; and

2.  Petitioner's request for appointment of counsel and an evidentiary hearing, filed with his traverse on October 28, 2004, also be denied.

These findings and recommendations are submitted to Honorable David F. Levi, the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after

1  service of the objections.  The parties are advised that failure to file objections within the

2  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

3  F.2d 1153 (9th Cir. 1991).

4  DATED:  1/24/07

                                        /s/ Gregory G. Hollows
5                                       _____
                                        GREGORY G. HOLLOWS
6                                       U. S. MAGISTRATE JUDGE

7
   GGH5:Smith1442.hc.ggh
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26